Gants, Ralph D., J.
The plaintiffs, Watts Water Technologies, Inc. (“Watts Water”) and Watts Regulator Company (“Watts Regulator”), move for partial summary judgment on Counts I and IV of their First Amended Complaint. Specifically, Watts Water and Watts Regulator ask this Court: (1) to declare that the defendants Travelers Indemnity Company (“Travelers”) and Hartford Fire Insurance Company (“Hartford”) jointly and severally have a duty to pay the attorneys fees and costs incurred to defend Watts Water and Watts Regulator against any lawsuit alleging bodily injury from asbestos that took place in whole or in part during the period covered by Travelers’ and Hartford’s insurance policies, even if such defense provides a benefit to uninsured co-defendants; (2) to declare that the duty to defend includes the duty to pay the reasonable fees of both local and national counsel at their usual and ordinary rates; and (3) to And that Travelers and Hartford have breached their insurance contracts by failing to pay Watts Water and Watts Regulator in accordance with their duty to defend.
BACKGROUND
Watts Regulator, since its incorporation in 1936, has manufactured a variety of valves that regulate the flow of liquids and gases. Watts Water was incorporated in December 1985 and, through a Plan of Reorganization, Watts Regulator became a wholly-owned subsidiary of Watts Water.
Watts Regulator purchased commercial liability insurance policies from Travelers covering the period from June 30, 1970 to June 30, 1973 (“the Travelers Policy”). Watts Regulator later purchased commercial liability insurance policies from Hartford covering the period from June 30, 1982 to June 30, 1985 (“the Hartford Policy”).
Since 2001, Watts Regulator, Watts Water, and other entities affiliated with Watts Water, such as Muesco, Inc., Leslie Controls, Inc., Ames Company, Inc., Hoke, Inc., and Powers Process Controls, have been named as defendants in roughly 300 lawsuits brought in a dozen states by roughly 21,000 plaintiffs alleging bodily injury as a result of exposure to asbestos-containing products (“the underlying lawsuits”). In some of these suits, Watts Regulator was directly named as a defendant. In others, Watts Regulator was indirectly named as a defendant, being identified as Watts Water a/k/a or d/b/a Watts Regulator. In still others, Watts Water was named as a defendant, but Watts Regulator was not. In these cases, Watts Water was either named as a defendant individually or as putative successor to Muesco, Inc., Leslie Controls, Inc., Ames Company, Inc., Hoke, Inc., or Powers Process Controls. In all these asbestos cases, the plaintiffs allege exposure to products containing asbestos during the period that includes the coverage period of the Travelers and Hartford commercial liability policies.
The Travelers Policy issued to Watts Water provides:
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury ... to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury . . . even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company’s liability has been exhausted by payment of judgments or settlements.
Travelers Policy at LI (emphasis in original). The italicized “insured” is a defined term in the Policy, meaning “any person or organization qualifying as an insured in the ’’Persons Insured" provision of the applicable insurance coverage." Policy at 1. Under that provision, the persons insured under this Policy are the named insured—Watts Regulator[1]—as well as “any executive officer, director or stockholder thereof while acting within the scope of his duties as such.” Policy at LI. The Hartford Policy, for all practical *661 purposes, includes the identical provisions. See Hartford Policy at 1-3.
When Watts Water and Watts Regulator requested coverage in these asbestos liability cases from Travelers and Hartford, these insurers each asserted that some or all of the liability claims alleged in the complaints may not be covered under their Policies but recognized their duty to defend Watts Regulator in these cases under a reservation of rights. Each, however, asserted that the duty to defend extended only to those underlying lawsuits in which a named insured— Watts Regulator — was a named defendant. In short, Travelers and Hartford have agreed that they have a duty to defend Watts Regulator in any case in which it is directly named as a defendant or indirectly named, such as in those cases in which the defendant is identified as Watts Water a/k/a or d/b/a Watts Regulator. They have refused to defend Watts Water in all those cases in which Watts Regulator is not directly or indirectly named as a defendant, because Watts Water did not exist as an entity during the policy periods and the other affiliated Watts entities that were named in many of these complaints — Muesco, Inc., Leslie Controls, Inc., Ames Company, Inc., Hoke, Inc., and Powers Process Controls — were not insured by either Travelers or Hartford (“the uninsured Watts affiliates”).
To defend itself and its related entities in the underlying lawsuits, Watts Water has retained Foley Hoag LLP (“Foley Hoag”) as national counsel and other law firms as local counsel. Travelers and Hartford have so far refused to pay any portion of Foley Hoag’s legal bills in the underlying lawsuits. Travelers and Hartford have paid some share of the legal bills tendered by local counsel but contend that they are not responsible to pay for legal work that benefits the uninsured Watts affiliates. As a result, the insurers have agreed to pay only what they contend to be their per capita share of these legal bills.
DISCUSSION
The Watts Entities have brought this motion for partial summary judgment seeking various declarations of law at an early stage of discovery. Travelers and Hartford contend that the motion should be denied under Mass.R.Civ.P. 56(f) because, when they responded to the motion, they had not yet even received the discovery they had sought from the Watts Entities. This Court recognizes that summary judgment would be premature as to any issue of fact that is either presently disputed or that reasonably may be disputed based on information that may be obtained in further discovery. Yet, this Court also believes that various questions of law are ripe for decision now, since they do not depend on any fact that reasonably is or may be in dispute. Those questions may be framed as follows:
1. Do Travelers and Hartford have a duty to defend Watts Water in the underlying lawsuits when it, but not Watts Regulator, is named as a defendant?
2. Does Travelers’ and Hartford’s duty to defend under the Policies require them to pay for legal work that benefits both their insured and non-insured entities working together as part of a joint defense?
3. Do Travelers and Hartford have a duty to pay for legal work performed by national counsel on behalf of an insured?
4. What is the legal standard for determining the reasonableness of legal fees incurred by an insured when the insurance company recognizes its duly to defend under a reservation of rights?
This Court will address each question in turn.
1. Do Travelers and Hartford have a duty to defend Watts Water in the underlying lawsuits when it, but not Watts Regulator, is named as a defendant?
“In Massachusetts, an insurer has a duty to defend an insured when the allegations in a complaint ‘are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms.’ ” Ruggerio Ambulance Service, Inc. v. National Grange Ins. Co., 430 Mass. 794, 796 (2000), quoting Liberty Mut. Ins. Co. v. SCA Servs., Inc., 412 Mass. 330, 332 (1992). The duty to defend is based not only on the facts alleged in the complaint but also on those facts which are known by the insurer that may aid in its interpretation of the allegations in the complaint. See Boston Symphony Orchestra, Inc. v. Commercial Union Ins., 406 Mass. 7, 10-11 (1989). “Otherwise stated, the process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.” Sterilite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316, 318 (1983). “In order for the duty of defense to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage. There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage.” Id. at 319, quoting Union Mutual Fire Ins. Co. v. Inhabitants of Town of Topsham, 441 A.2d 1012, 1015 (Me. 1982). “However, ‘when the allegations in the underlying complaint ‘lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate’ or defend the claimant.’ ” Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 394-95 (2003), quoting Timpson v. Transamerica Ins. Co., 41 Mass.App.Ct. 344, 347 (1996), which quotes Terrio v. McDonough, 16 Mass.App.Ct. 163, 168 (1983).
Here, there is no dispute that the allegations in the complaints in the underlying lawsuits, to the extent *662 that they allege that Watts Regulator was the source of asbestos that caused bodily injury to the plaintiffs, are reasonably susceptible of an interpretation that states a claim covered by the terms of the Travelers and Hartford Policies. Thus, Travelers and Hartford acknowledge their duty to defend Watts Regulator in any complaint in which it is named, either directly or indirectly, as a defendant. The insurers, however, argue that they have no duty to defend Watts Water in any of the underlying lawsuits in which Watts Regulator was not named, directly or indirectly, as a defendant. They note that the language of their Policies state that they only have a “duty to defend any suit against the insured, seeking damages on account of such bodily injury,” and that Watts Water was never an insured, since it did not even exist at the time of these Policies. This Court agrees that, when no insured is named as a defendant in a lawsuit, the insurance company has no duty to defend the uninsured defendant against the claims in the suit because the allegations “lie expressly outside the policy coverage.” See Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. at 394-95. In such a lawsuit, if the uninsured defendant defaulted and thereby effectively admitted all the allegations in the complaint against it, the judgment would be against the uninsured defendant, and the insurance company would have no obligation to pay the damages.
Although Watts Water has proffered no Massachusetts case that stands for the principle that an insurance company has a duty to defend an uninsured defendant in a lawsuit in which no insured party is named as a defendant, it presents various intriguing, but ultimately futile, theories why this Court should extend the duty to defend in this case. First, it properly notes that the Policies include as an insured not only Watts Regulator, but also any “stockholder thereof while acting within the scope of his duties as such.” Travelers Policy at LI. This provision, however, is limited to lawsuits brought against stockholders for actions committed as a stockholder during the policy period, and Watts Water, since it did not exist, was not acting as a shareholder during the policy period.
Second, it contends that it is possible, even likely, that the plaintiffs who sued Watts Water meant to sue Watts Regulator, not recognizing that Watts Water is simply a holding company and that it was Watts Regulator who manufactured the valves that contained asbestos. It may indeed be true that the plaintiffs may have erred, but that does not trigger a duty to defend unless the allegations actually made, reasonably interpreted, would permit a possible interpretation that could result in liability to an insured party. Until Watts Regulator is made a party, there is no reasonable possibility that, as a separate corporate entity (albert a wholly-owned entity), it will be required to pay a judgment. See Henkel Corporation v. The Hartford Accident & Indemnity Company, 399 F.Sup.2d 607 (E.D.Pa. 2005) (applying Pennsylvania and Connecticut law, holding that an insurer has no duty to defend when the insured, because of a mistake by the plaintiff, is not named as a defendant in the underlying action). A party may mistakenly sue General Motors on a product liability claim based on an allegedly unsafe vehicle manufactured by Ford Motors that crashed and caused the plaintiff serious injury, but the possibility of that error would not mean that Ford Motors’ insurer had a duty to defend General Motors in this action. The result would be no different if Ford Motors were wholly-owned by General Motors, as long as Ford Motors remained a corporation and continued to be a separate and distinct legal entity.
Third, Watts Water contends that, unless Travelers and Hartford were to agree to defend Watts Water in actions where it is mistakenly named, it would move to dismiss the action against Watts Water on the grounds that Watts Regulator should be the true defendant, which will likely cause the plaintiffs to correct their error and bring in Watts Regulator as a defendant, which will then trigger the duty to defend. Watts Water contends that placing it in this position violates the implicit covenant of good faith and fair dealing that Travelers and Hartford owe to their insured, Watts Regulator, since it will place Watts Regulator in an inferior litigation position. By this argument, Watts Water is essentially contending that the law obligates Travelers and Hartford to defend Watts Water, who is not its insured, so that Watts Water can lay low during the litigation and then move later (perhaps at trial) for its dismissal, when it will be too late pragmatically for the plaintiffs to correct their mistake and name Watts Regulator as a defendant. Such a strategy, if it were to work, may indeed help Watts Regulator, but it would not serve the interests of justice in obtaining a judgment on the merits of the controversy. The law has no interest in allowing the wrong party mistakenly to remain a defendant in any action. In short, if Watts Water wishes to play this litigation game, it will have to bear the litigation costs; Watts Regulator’s insurer has no legal duty to join in it.
Fourth, Watts Water contends that there is a possibility that the plaintiffs mean to impose liability on Watts Water as successor in interest to Watts Regulator, even though the complaint does not say so, and this possibility is sufficient to trigger the duty to defend. The flaw in this argument, apart from the fact that Watts Water contends that it is not the successor in interest to Watts Regulator but simply owns all its shares, is that, even under this theory of liability, any judgment would still be against Watts Water alone, not Watts Regulator. To be sure, if there were an allegation in the complaint alleging that both Watts Water and Watts Regulator were liable, perhaps under a corporate veil theory, the result would likely be different. Yet, the bottom line remains that a court may not enter a judgment against an entity that is not a party to a lawsuit, so Watts Regulator may not be legally obli *663 gated to pay damages in any underlying lawsuit until it is in some fashion named as a defendant in that lawsuit. Therefore, this Court declares that Travelers and Hartford owe a duty to defend only in those underlying lawsuits in which Watts Regulator is identified as a named defendant, either directly or indirectly.
2. Does Travelers’ and Hartford’s duty to defend under the Policies require them to pay for legal work that benefits both their insured and non-insured entities working together as part of a joint defense?
In the underlying asbestos lawsuits, in those cases in which Watts Regulator is named as a defendant, Watts Regulator is participating in a joint defense with uninsured Watts affiliates. Watts Regulator contends that the duty to defend obligates Travelers and Hartford to pay all reasonable attorneys fees and expenses that its attorneys incur in defense of Watts Regulator, even if that work also benefits the uninsured Watts affiliates. The insurers contend that their duty is only to defend Watts Regulator, not uninsured defendants, and that, when there is a joint defense, they are obliged to pay only a reasonably allocated share of the attorneys fees incurred.
“Properly understood, the joint defense or common interest doctrine is a device designed to prevent waiver of the attorney-client privilege when discrete parties face the same legal claim.” Am. Auto. Ins. Co. v. J.P. Noonan Transp., 12 Mass. L. Rptr. 493, 496, 2000 WL 33171004 at *6 (Mass.Super.Ct. Feb. 2001) (McHugh, J.), citing Chahoon v. Commonwealth, 62 Va. (21 Gratt.) 1036 (1871). The joint defense or common-interest doctrine applies “[w]hen two or more clients consult or retain an attorney on particular matters of common interest” as well as to “communications made by the client or the client’s lawyer to a lawyer representing another in a matter of common interest.” Ken’s Foods, Inc. v. Ken's Steak House, Inc., 213 F.R.D. 89, 93 (D.Mass. 2002), citing 3 Weinstein’s Federal Evidence §§503.21[1] & 503.12[2] (internal quotations omitted). Further,
the privilege allows attorneys facing a common litigation opponent [to] exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege.
Id. (internal citations and quotations omitted).
Pragmatically, there may be a joint defense in a lawsuit when one attorney (or law firm) represents multiple parties with common interests, or when the parties each retain separate counsel but those counsel choose to work together to pursue their common interests. In the former, the attorney would perform some work that may benefit only a single client, but much of the work would jointly benefit many, perhaps all, her clients. In the latter, assuming the joint defense attorneys worked together to allocate work that would jointly benefit all their respective clients, an attorney would also perform some work that may only benefit her client and other work that may jointly benefit her client and the clients of other attorneys participating in the joint defense.
When there are no insurers involved, the parties and their attorneys participating in the joint defense would need to negotiate the allocation of responsibility for the attorneys fees incurred in performing joint defense work. If Travelers or Hartford had agreed to indemnify Watts Regulator for all judgments within the policy limits, then the insurers would have exercised their “right and duty to defend” by retaining counsel jointly to represent Watts Regulator and themselves. The attorney retained by the insurer could then have participated in these negotiations with the attorneys for the uninsured parties. Here, however, both insurers agreed that they had a duty to defend, but under a reservation of rights. Having chosen to reserve their rights, the insurers lost the right to retain counsel for the insured, which now had the right to defend and control the defense of the lawsuit. See Three Sons, Inc. v. Phoenix Ins. Co., 357 Mass. 271, 275-77 (1970). The insurer cannot “reserve its rights to disclaim liability in a case and at the same time insist on retaining control of its defense.” Id. at 276, quoting Salonen v. Paanenen, 320 Mass. 568, 574 (1947). Therefore, when an insurer chooses a reservation of rights, it loses its ability to control the defense but retains, as part of its duty to defend, the obligation “to pay the reasonable charges of [the insured’s] counsel, who provided . . . the defense that [the insurer] was bound to furnish." Magoun v. Liberty Mutual Ins. Co., 346 Mass. 677, 685 (1964).
Watts Regulator argues that its insurers must reimburse it for all the attorneys fees it incurred in its defense of the underlying asbestos lawsuits as long as the work performed was reasonably related to the claims against it, regardless of whether the work performed also benefited the uninsured Watts affiliates. See Raychem Corp. v. Fed. Ins. Co., 853 F.Sup. 1170, 1182 (N.D.Cal. 1994), adopting “reasonably related” standard set forth in Cont'l Cas. v. Bd. of Educ. of Charles County, 302 Md. 516, 489 A.2d 536, 545 (1985). See also Safeway Stores, Inc. v. Nat’l Union Fire Ins. Co. of Pittsburgh, Pa, 64 F.3d 1282, 1289 (9th Cir. 1995) (“Defense costs are thus covered by a [Directors and Officers Liability] policy if they are reasonably related to the defense of the insured directors and officers, even though they may also have been useful in defense of the uninsured corporation”). Anything less, it contends, would fail to fulfil the insurer’s duty to defend.
Travelers and Hartford, however, argue that they have no duty to defend the uninsured Watts affiliates, and no desire to provide them with free legal work. The insurers contend that, when legal work is shared with *664 these affiliates, the cost of that work should be shared equally among all the parties benefiting from that work. Otherwise, they argue, all the joint defense work will be performed by the attorneys for Watts Regulator, since they are the only attorneys whose fees are being paid by the insurers rather them the defendant corporations.
This Court recognizes the legitimate concerns raised by all sides, and takes a middle ground. When the insurer reserves its rights and thereby loses its right to appoint its own counsel, the decision as to whether to enter into a joint defense rests solely with the insured, not the insurer. If Watts Regulator had chosen to work solo and not share its work product with any other parly, then the insurers would need to pay the entirety of the reasonable attorneys fees incurred by Watts Regulator’s counsel. When, as here, Watts Regulator chooses to enter into a joint defense, then the insurers continue to remain responsible to pay all reasonable attorneys fees incurred by Watts Regulator’s legal team, provided the work is reasonably related to the defense of Watts Regulator, regardless of whether that work is shared with other members of the joint defense team and thereby benefits uninsured parties. The governing standard, regardless of whether or not an insured enters into a joint defense, is the reasonableness of the attorneys fees. However, when an insured enters into a joint defense, the inquiry regarding the reasonableness of the attorneys fees is broadened to include the reasonableness of the allocation of costs among the parties within the joint defense for work that benefits the joint defense. That allocation need not always be equal. Indeed, even when the insurer does not reserve its rights and appoints counsel to represent its insured, equality is not always the outcome of the negotiations regarding the allocation of joint defense costs. The allocation must simply be reasonable in view of all the surrounding circumstances, considering the relative exposure of the parties to liability, the size of the parties, and the parties most benefiting from the joint defense work. The guidepost is the allocation that reasonably would have been negotiated had each party in the joint defense paid its own legal fees.
3. Do Travelers and Hartford have a duty to pay for legal work performed by national counsel on behalf of an insured?
Travelers and Hartford, while acknowledging their duty to defend, contend that they have a duty to pay only one law firm to represent Watts Regulator, and therefore have no duty to pay the legal fees of Watts Regulator’s national counsel, Foley Hoag. This Court knows of no such fixed rule under Massachusetts law and is not prepared to create one here.
Travelers and Hartford are correct in asserting that the duty to defend does not obligate them to pay for the unnecessary and unreasonable duplication of legal services competently performed. See, e.g., Trinity Universal Ins. Co. v. Stevens Forestry Serv., Inc.., 335 F.3d 353 (5th Cir. 2003). This is so regardless of whether the duplicated work is performed by the same or a different law firm. While attorneys in the same law firm may be somewhat more likely to communicate and cooperate with each other so as to avoid needless duplication than attorneys in different firms, that likelihood grows smaller as law firms grow in size and in the number of offices they maintain, as attorneys become more specialized in their work, and as the technological means to coordinate with attorneys in different locations grow more varied and sophisticated. There is nothing inherently unreasonable about an insured retaining one attorney at one firm to focus on one set of issues where she has special expertise and experience, and retaining another attorney at a different firm to focus on a different set of issues, where he has particular expertise and experience. Nor is there anything inherently unreasonable about Watts Regulator retaining Foley Hoag as its national counsel and other law firms as its local counsel to represent it in the roughly 300 underlying asbestos lawsuits in a dozen states. By retaining national counsel, Watts Regulator reasonably can have Foley Hoag prepare a litigation strategy common to all the 300 lawsuits, research legal issues common to all the claims, allocate work among the various local counsel, and ensure that work product valuable to all is shared with all local counsel to avoid needless duplication of work.
As with the allocation of joint defense work within the joint defense, the governing standard is reasonableness. The insurers must pay for legal work performed at a reasonable cost that is reasonably related to the defense of Watts Regulator, regardless of whether that work is performed by a single law firm or allocated among national counsel and various local counsel. The insurers need not pay for work that is needlessly duplicated, regardless of whether that duplication is performed by attorneys within the same firm or at different firms.
4. What is the legal standard for determining the reasonableness of legal fees incurred by an insured when the insurance company recognizes its duty to defend under a reservation of rights?
Watts Regulator argues that, once it demonstrates that the hourly billing rates it is charged by its attorneys are that law firm’s regular billing rates, those rates should be presumed reasonable by its insurers, regardless of whether those rates are higher than those generally negotiated by insurance companies for counsel they retain in similar asbestos lawsuits. Travelers and Hartford contend that no such presumption is appropriate, and that the reasonableness of attorneys’ billing rates should be measured by the rates routinely obtained from law firms by insurance companies in comparable cases. For purposes of this *665 motion, since discovery is far from complete, this Court will accept as true the factual predicate proffered by the insurers — that Foley Hoag’s hourly billing rates are significantly higher than the billing rates paid by insurance carriers when they retain qualified counsel to represent their insureds in comparable asbestos lawsuits.
All parties here recognize that the duty to defend under a reservation of rights does not obligate the insurer to pay all attorneys fees incurred by the insured, regardless of the reasonableness of those fees. Rather, all recognize that the duty to defend obligates the insurer to pay the full amount of reasonable attorneys fees incurred. See Magoun v. Liberty Mutual Ins. Co., 346 Mass. at 685; Liberty Mutual Ins. Co. v. Continental Cas. Co., 771 F.2d 579, 582 (1st Cir. 1985) (“only reasonable fees may be recovered”). When reasonable attorneys fees are ordered to be paid in a litigation, for instance when the plaintiff prevails in a Chapter 93A action, the factfinder, in determining the amount of reasonable attorneys fees, “should consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation, and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.” Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979). See also Heller v. Silverbranch Construction Corp., 376 Mass. 621, 628-29 (1978). “No one factor is determinative, and a factor-by-factor analysis, although helpful, is not required.” Berman v. Linnane, 434 Mass. 301, 303 (2001).
In such cases, the burden of proving the reasonableness of the attorneys fees incurred rests with the party seeking payment of those fees. See Snow v. Mikenas, 373 Mass. 809, 812 (1977) (party claiming attorneys fees bears “both the burden of going forward with evidence and the burden of persuasion on the issue of the reasonableness of attorneys fees”); Liberty Mutual Ins. Co. v. Continental Cos. Co., 771 F.2d at 582 (“It is obvious that the party claiming such expenditures has the burden of proving them, including the burden of proving whether the fees were in fact reasonable”).
When reasonable attorneys fees are required to be paid pursuant to a contract, such as an insurance policy, the contract may define the term “reasonable attorneys fees,” and establish a procedure for determining whether the fees incurred were reasonable. Here, the Policies are silent on these matters. In California and Alaska, the Legislatures have enacted statutes that define how a reasonable billing rate is to be determined under the insurer’s duty to defend with a reservation of rights when the insurance policy is similarly silent — in both states, the insurer’s obligation to pay the fee charged by the insured’s retained counsel “is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended.” Cal.Civ.Code §2960(c) (2007). See also Alaska Stat. §21.89.100 (2007).[2] No comparable statute exists under Massachusetts law. Travelers and Hartford suggest that, in the absence of statutory authority, a similar limitation should be imported into Massachusetts common law.
This Court declines to do so. The common-law meaning of reasonable attorneys fees has long been understood to be determined by the so-called Linthicum factors. One of the Linthicum factors is “the usual price charged for similar services by other attorneys in the same area.” Linthicum, 379 Mass. at 389. This factor may not fairly be understood to mean the usual price paid by insurance companies to other attorneys for similar services in the same area. Insurance companies, for at least two reasons, may often pay less than “the usual price charged for similar services by other attorneys in the same area.” First, since they retain so many attorneys in so many cases, they have the leverage to obtain billing rates lower than the usual rates charged by law firms, since many firms are willing to reduce their rates in return for the hope or promise of obtaining a substantial volume of legal work. An insured retaining its own attorney will not generally possess this “buying power.” Second, insurance companies in many cases that are routine to them (albeit perhaps not routine for their insureds) may prefer lower-priced attorneys if they determine that the savings in legal costs will exceed any anticipated increase in the damages they must pay on behalf of their insureds. An insured, who is looking only at its own risk if the insurer that has reserved its rights ultimately refuses to pay damages, may wish to pay more in legal fees to minimize the risk of a substantial damage judgment, especially if that insured is risk averse.
For all practical purposes, if the Massachusetts common law were to adopt the standard established by statute in California and Alaska, an insured under a reservation of rights would have to choose between two poor alternatives. It could retain the same law firms retained by insurance companies that handle comparable cases, and attempt to procure the same rates that these firms charge to insurance company clients, thereby severely limiting their choice of counsel. Or it could retain higher-priced counsel of its own choice, and pay the difference between the rates charged by those law firms and the rates routinely paid by insurance companies. If the insurer wishes to impose this limitation on its insureds, it may do so by clearly so stating in the insurance policy. If the insurer is unwilling to provide fair notice of this limitation in the policy, it should not look to obtain it through the back door via a common-law rule. See generally Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 *666 Mass. 275, 282 (1997) (since an insurance policy is essentially an adhesion contract, any ambiguity must be construed against the insurer).
Moreover, an insurer cannot reserve its rights and thereby surrender control of the defense, and still reasonably expect that it will pay the same amount of legal fees that it would have paid had it accepted coverage and retained control of the defense. Through its reservation of rights, the insurer’s duty to defend is transformed into a duty to reimburse its insured for reasonable attorneys fees incurred by the insured’s chosen counsel. What is reasonable is not what an insurance company would pay to the attorneys it would retain, but what a reasonable person in the insured’s position would pay for capable attorneys it chose to retain.
The Linthicum factors do not create factual presumptions; they simply permit inferences that may be given appropriate weight. Therefore, Watts Regulator is not entitled to any presumption that the billing rates routinely charged by Foley Hoag to its clients are reasonable. Watts Regulator may certainly argue that one can infer that Foley Hoag’s billing rates are reasonable, since other clients are paying them. But Travelers and Hartford are free to argue that Foley Hoag’s billing rates are far higher than are reasonable for the lype of work it performed. The insurance companies, however, in reviewing Watts Regulator’s request for fee reimbursement, must fulfil their obligation under G.L.c. 176D to avoid unfair acts or practices, including “compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.” G.L.c. 176D, §3(9)(g).
Therefore, this Court declares that the legal standard for determining the reasonableness of legal fees incurred by an insured when the insurance company recognizes its duly to defend under a reservation of rights is the Linthicum standard, with its various factors but without any legal presumptions. One of the Linthicum factors is “the usual price charged for similar services by other attorneys in the same area,” Linthicum, 379 Mass. at 389, not the usual price paid by insurance companies to other attorneys for similar services in the same area.
ORDER
For the reasons stated above, this Court ORDERS that Payton’s motion for partial summary judgment is ALLOWED to the extent that;
1. This Court declares that Travelers and Hartford owe a duty to defend only in those underlying lawsuits in which Watts Regulator is identified as a named defendant, either directly or indirectly.
2. This Court declares that when, as here, Watts Regulator chooses to enter into a joint defense, Travelers and Hartford continue to remain responsible to pay all reasonable attorneys fees incurred by Watts Regulator’s legal team, provided the work is reasonably related to the defense of Watts Regulator, regardless of whether that work is shared with other members of the joint defense team and thereby benefits uninsured parties. The governing standard, regardless of whether or not an insured enters into a joint defense, is the reasonableness of the attorneys fees. However, when an insured enters into a joint defense, the inquiry regarding the reasonableness of the attorneys fees is broadened to include the reasonableness of the allocation of costs among the parties within the joint defense for work that benefits the joint defense. The allocation must be reasonable in view of all the surrounding circumstances, considering the relative exposure of the parties to liability, the size of the parties, and the parties most benefiting from the joint defense work. The guidepost is the allocation that reasonably would have been negotiated had each party in the joint defense paid its own legal fees.
3. This Court declares that there is nothing inherently unreasonable about Watts Regulator retaining Foley Hoag as its national counsel and other law firms as its local counsel to represent it in the roughly 300 underlying asbestos lawsuits in a dozen states. As with the allocation of joint defense work within the joint defense, the governing standard is reasonableness. The insurers must pay for legal work performed at a reasonable cost that is reasonably related to the .defense of Watts Regulator, regardless of whether that work is performed by a single law firm or allocated among national counsel and various local counsel. The insurers need not pay for work that is needlessly duplicated, regardless of whether that duplication is performed by attorneys within the same firm or at different firms.
4. This Court declares that the legal standard for determining the reasonableness of legal fees incurred by an insured when the insurance company recognizes its duty to defend under a reservation of rights is the Linthicum standard, with its various factors but without any legal presumptions. One of the Linthicum factors is “the usual price charged for similar services by other attorneys in the same area,” Linthicum, 379 Mass. at 389, not the usual price paid by insurance companies to other attorneys for similar services in the same area.

 Other affiliated entities are also identified as named insureds, but not Muesco, Inc., Leslie Controls, Inc., Ames Company, Inc., Hoke, Inc., and Powers Process Controls.

Hartford contends that “the vast majority of other states” have imposed similar limitations on the attorneys fees that must be paid under a duty to defend with a reservation of rights. Hartford Memorandum of Law at 21. This Court has read the California and Alaska statutes, and is familiar with Massachusetts law (which Hartford agrees has not addressed this issue), but has not attempted to examine the statutes or case law of the other 47 states.