Sanders, J.
This is a class action brought by two named plaintiffs representing several thousand insurance brokers. On September 12, 2002, this Court (Toomey, J.) found that the defendants violated G.L.c. 93A as a result of changes that they made in the commissions they paid the plaintiffs on certain disability insurance policies [12 Mass. L. Rptr. 220]. As a result of that finding, the plaintiffs have filed an Application for Attorneys Fees and Costs, to which the defendants have lodged certain objections. This Memorandum outlines the Court’s decision as to those objections, and sets parameters for the parties so that a recalculation of attorneys fees and costs can be made.
BACKGROUND
This case is the lead case in a set of fifty cases brought against the defendants by plaintiffs’ counsel. The first case to be filed was Hughes v. Provident Companies, Inc. et al, Civ. No. 97-1099 (the “Hughes case”). It was brought on behalf of a putative class of 400 Career Agents for the defendant Paul Revere Corporation (“Paul Revere”) claiming that the termination of their employment due to the merger of Paul Revere with other companies violated their employment contracts. One month later, the plaintiffs amended the Complaint to include allegations chai *92 lenging a 1995 change to commissions similar to the change at issue in the instant case. At the same time, this case was filed on behalf of 18,000 independent brokers alleging a breach of contract as well as a 93A violation. Thereafter, 48 General Managers of Paul Revere sued the defendants in separate lawsuits, challenging changes to their compensation and also claiming breach of their employment contracts. The fifty cases thus shared some similarities in that they all challenged changes in commissions that went into effect in 1995. There were also some differences: the issues and claims were not identical, different contacts were involved, and there were differences in the witnesses who would testify at each trial.
Although the plaintiffs reside all over the country, all cases were filed in the Worcester Superior Court. They were consolidated for discovery only. All fifty-cases are still pending. Of the group, the instant case is the only one where the plaintiff class was certified and the matter proceeded to trial.
At the pretrial stage of this case, the defendants mounted an aggressive defense. The plaintiffs’ Motion for Class Certification was vigorously opposed, and there was extensive litigation over discovery issues. Entries on the docket sheet include a Motion to Dismiss, the filing of a Counterclaim, and more than one Motion for Summary Judgment. A discovery master was appointed with regard to various issues, including whether defendants should be required to disclose communications with their lawyers. This issue came up again, both at the jury trial and post-trial, and has been the subject of extensive briefing and at least two court decisions.
Count I of plaintiffs’ Amended Complaint (alleging breach of contract) went to a jury trial on March 26, 2001; the trial concluded on April 13, 2001 with a jury verdict in the defendants’ favor. The Court, however, reserved decision on the Chapter 93A claim, and a six-day bench trial took place six months later. Judge Toomey, who had presided at the jury trial, considered the evidence presented at the jury trial together with the additional evidence presented to the Court. In October 2002, he concluded that the defendants violated Chapter 93A by reducing, from fifty percent to ten percent, the plaintiff brokers’ first-year commissions due upon the exercise of certain disability insurance options. See Eldridge v. Provident Cos., Inc., 2002 WL 31097684, 15 Mass. L. Rptr. 220 (Mass.Super. 2002). Judge Toomey ordered that damages be doubled and left open the question of how much damages should be awarded, ordering the parties to confer.
Following that order, Judge Toomey died and this Court was specially assigned to the case in January 2003. Post-trial discovery as to damages was conducted and further litigation ensued, resulting in two separate court rulingsone on September 12, 2003 and a second ruling handed down today. See Memorandum of Decision and Order on Defendants’ Motion for Clarification, and Memorandum of Decision and Order Regarding the Calculation of Damages and Interest As a result of this Court’s rulings on those issues, the actual damages (before any doubling of damages) are $762,612. Prejudgment interest will add more than $2 million to the judgment. The question before the Court is what amount of attorneys fees and costs should be made part of that judgment on the 93A count.
The Application for Attorneys Fees seeks compensation for fees totaling $4,086,457.20, requests multiplication of that amount by a factor of 2.5 and seeks reimbursement of litigation costs totaling $375,998.84. The attorneys fees are for 12,427 hours of work by twenty-four different attorneys and a dozen paralegals. The lead counsel, James R. Hubbard, has offices in West Palm Beach, Florida. A second lead counsel, Glen DeValerio, has offices in Boston. Both seek compensation at an hourly rate of $500, which is well above the prevailing rate for a lawyer in Worcester.
Just as with eveiy other important issue in this Case, the issue of attorneys fees has been hotly litigated. Before this Application was filed, the parties were permitted to engage in discovery over a period of several months. Both sides have filed with this Court several Affidavits of Counsel together with Exhibits in support of their positions, all contained in three different Appendices. Those Exhibits include detailed time records from the four law offices representing the plaintiffs, computerized printouts of expenses, and the defendants’ analysis of the records produced. This Court has carefully reviewed all of those submissions.
DISCUSSION
The parties do not disagree as to the legal principles which this Court should apply in deciding what attorneys fees to award. They are to be determined by the lodestar method of computation, which requires multiplying the total number of hours reasonably spent preparing and litigating a case by the fair market rate. Fontaine v. Ebtec Corporation, 415 Mass. 309, 326 (1993); see also Grendel’s Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984). In determining the reasonableness of the hours spent, this Court is to consider several factors. Those factors include: 1) the length of the trial; 2) the difficulty of the legal and factual issues; 3) the amount of damages involved; and 5) the result obtained. Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979); see also Heller v. Silverbranch Construction Corp., 376 Mass. 621, 629 (1978). Factors which bear on the reasonableness of the hourly rate include: 1) the degree of competence demonstrated by the attorney; 2) the attorney’s experience, skill and reputation; and 3) the usual prices charged by attorneys of similar experience in the same area. The burden is on the plaintiffs to establish their entitlement to the fees requested. Ultimately, the question of how much to award lies within the sound discretion of the Court.
*93 Defendants object to both the number of hours submitted by plaintiffs’ counsel as well as the hourly rate charged. In assessing the validity of these objections, this Court recognizes that this was a hard fought case with many different issues raised. The defendants chose to litigate at every step of the way, and plaintiffs’ counsel had to win most of these battles to have achieved the result that they did. The result achieved was in fact a good one: having lost before a jury, the plaintiffs nevertheless persuaded ajudge that the defendants’ conduct constituted a wilful violation of 93A so that a doubling of actual damages was warranted. Judgment will ultimately be entered against the defendants for several million dollars.
On the other hand, the amount of attorneys fees requested is quite largemore than five times the actual damages in this case even without the multiplier that the plaintiffs seek. Moreover, the number of lawyers involved in this single case on behalf of the plaintiffs and the sheer number of hours for which they seek compensation seem high. This Court thus takes the defendants’ objections quite seriously, discussing objections to the number of hours spent in Part I below, and the hourly rate in Part II. Other issues are taken up in Parts III and IV.
I. Reasonableness of the Number of Hours
The defendants lodge both general and specific objections to the amount of time for which the plaintiffs’ lawyers seek compensation. I will discuss each in turn.
A. Work Related to Other Cases
Defendants argue that many of the hours set forth in the Application are for work related to the Hughes matter and/or the 48 General Manager cases which plaintiffs’ counsel are simultaneously litigating against the same defendants. This was the subject of some discovery before this Application was filed, and plaintiffs’ counsel did in fact eliminate many entries that they had initially included. Defendants contend, however, that these deletions have not gone far enough, and have sifted through each attorney’s and paralegal’s hours in an attempt to demonstrate that some specific portion was for work on non-Eldridge issues. See Exhibits 4A and 4B of Appendix to Defendants’ Opposition and Objections to Plaintiffs’ Fee Application (“Defendants’ Appendix"). More generally, they ask this Court to reduce by 40 percent those hours which, in defense counsel’s opinion, relate to work pertaining to multiple cases. See Affidavit of Bonnie Pierson Murphy 32. The defendants have analyzed the time records offered in support of the fee Application to detail what work they regard as related to multiple matters, and have set forth those hours in Exhibits 6A, 6B and 6C of Defendants’ Appendix.
As to the defendants’ specific objection pertaining to those hours set forth in Exhibits 4A and 4B to the Defendants’ Appendix, I conclude that the defendants’ position has merit. The descriptions that each plaintiffs attorney has offered with respect to the time set forth in Exhibit 4A appear on their face to relate to cases other than Eldridge. For example, both attorneys Chad Steele and Mike Lange billed the Eldridge case for work in connection with a renewed motion for class certification in April and May 2001; in fact, the class had already been certified in Eldridge and the case had gone to a jury trial. There were also telephone conferences and other correspondence with General Managers and Career Agents who were the plaintiffs in the other cases, not in Eldridge. In Exhibit 4B, the descriptions of time do not specifically refer to work unrelated to Eldridge, but the defendants have correlated those descriptions with what was taking place in cases other than Eldridge to demonstrate that this time was unlikely to have been for work required by the instant case. The plaintiffs do not attempt to explain any of these entries, and in fact concede that at least some of them should in all fairness be excluded. See Plaintiffs’ Reply to Defendant’s Opposition, p. 16. Accordingly, I conclude that the fee award must be reduced by the number of hours set forth in Exhibits 4A and 4B.
I do not agree, however, with the defendants’ more general contention that, because much of the time spent in Eldridge also related to issues raised in the other 49 cases which plaintiffs’ counsel were pursuing against the defendants, I should therefore reduce those hours by 40 percent. The hours which the defendants contend relate to multiple cases are set forth in Exhibits 6A, 6B, and 6C of Defendants’ Appendix. Plaintiffs correctly point out that many of the entries which the defendants classify as involving multiple cases in fact directly relate to the filings in the instant case. See pp. 12-13 of Plaintiffs’ Reply Brief. Moreover, I find that the issues in all of the cases are so closely intertwined that it is virtually impossible to determine what amount of work would not have been performed if the Eldridge case had not been filed. It would therefore be unfair to presume that some definable portion of these hours was unnecessary; indeed, precisely the opposite presumption would be warranted under the circumstances. Accordingly, this Court concludes that a percentage reduction in those hours which relate to multiple cases is not justified.
This conclusion is supported by the following. First, plaintiffs’ counsel have submitted detailed time records which set forth the date on which the services were performed, the amount of time spent and a description of tasks sufficiently detailed to show some connection with this case. The defendants have had an opportunity to conduct and have engaged in discovery concerning these records and the basis for them.[1] Second, although all cases were consolidated for discovery, it was the Eldridge case which received *94 all the attorneys’ attention and actually moved forward to trial. Class certification in the Hughes case was denied, and the matter essentially lay dormant; the individual General Manager cases had no trial date. Thus, it is sensible to assume that the bulk of the work which overlapped with these other cases was performed because it was believed to be and was reasonably necessary to the Eldridge case, moving forward on a faster track. Third, the overlap in issues between Eldridge and the other cases is substantial: Each case challenged a change in commissions, and although they involve different contracts, the provisions of each contract alleged to have been breached concerned the same kind of commission payment provisions as that contained in the Broker Agreement at issue here. Because of this overlap, it is difficult to see the basis for any particular percentage reduction simply because the work was not exclusive to the Eldridge matter. That documents collected for the Eldridge case could also prove useful in other litigation does not mean that plaintiffs’ attorneys (and their paralegals) are not entitled to be compensated for their time. Finally, defense counsel have themselves billed for more hours in the Eldridge case than are contained in plaintiffs’ fee Application. Although that is certainly not dispositive as to whether the plaintiffs are entitled to the fee award that they seek (and indeed, this Court does not use that comparison in determining a fair hourly rate or the reasonableness of staffing decisions) it does provide some guidance for this Court as to how much time was required by at least one side of this case to prepare for and proceed to trial and to handle all post-trial matters.
B. Work Related to Unsuccessful Claims
The defendants argue that the fee Application should be reduced to reflect the fact that the plaintiffs were unsuccessful on their breach of contract claim. Specifically, they say that plaintiffs’ counsel should not be able to collect for every hour of time spent on the jury trial, since the jury found for the defendants. Certainly, the defendants are correct in their contention that hours spent on unsuccessful claims which are distinct from those claims on which the plaintiffs prevailed should not figure into any fee award. However, it is equally true that, where the claims arise from a single chain of events or where there is a core theory which governs all of the claims, apportionment of the legal effort among the different claims is neither necessary nor appropriate. Office One, Inc. v. Lopez, 437 Mass. 113, 126, n.17 (2002); see also System Management, Inc. v. Loiselle, 154 F.Sup.2d 195, 209-10 (D.Mass. 2001). Such is the case here.
The events giving rise to this case were essentially the same for the breach of contract claim and for the 93A claim: Those events concerned Paul Revere’s decision to change commissions on disability policy options and the circumstances leading up to it. Judge Toomey specifically noted in his 93A decision that he relied upon all the evidence presented at the jury trial, and in fact referred to the testimony of certain of those witnesses in concluding that the defendants had engaged in deceptive and unfair acts and practices. Just as it is difficult to separate out work on the Eldridge case from that work exclusive to other cases where they are so closely intertwined, this Court sees no rational or fair way to segregate out work related exclusively to the breach of contract claim from that work necessitated only by the 93A claim. That does not mean, however, that plaintiffs’ counsel are entitled to be compensated for eveiy hour and fraction of an hour spent on the juiy trial. Some reduction is required.
First, hours logged for work necessitated only by the presence of ajuiy should be excluded entirely from any fee award. That would include the following.
a) Records show that the plaintiffs used a “focus group,” presumably to determine how jurors would react to the attorneys’ presentation. This expense would not have reasonably been incurred if there had been only a 93A claim to be tried to a judge.
b) Time spent selecting the jury should be excluded.
c) Time preparing and arguing requests for jury instructions should not be counted.
d) Motions in Limine regarding evidence which should or should not be presented to the jury because they did not have the 93A claim before them does not involve work which would have been required if the case had proceeded only as a 93A claim.
e) Preparing and arguing the Motion for New Trial should not be part of any fee award. This was an unsuccessful effort to overturn the jury verdict based on perceived defense misconductan effort that ultimately proved to be unsuccessful.
In addition to excluding hours for certain tasks, I conclude that some overall percentage reduction of the hours logged at the jury trial itself is appropriate in this case. This makes sense for two reasons. First, jury trials invariably last longer than bench trials: There are side bar conferences, lengthy opening statements and closing arguments which are either abbreviated or eliminated entirely at a bench trial, and more time spent explaining and illustrating matters because of the diversity and the sheer number of people on the jury which a party must convince. If this had been a bench trial, fewer hours would have been necessary to present the case. Second, there was in fact a bench trial in addition to the juiy trial where the plaintiffs had an opportunity to and in fact did present much of the same evidence their attorneys had already presented to the jury. Because there were two trials instead of one, some duplication of effort was inev *95 itable. Accordingly, I conclude that the number of hours that plaintiffs’ attorneys actually spent in the jury trial must be discounted by one third, or 33.3 percent.
C.Multiple Timekeepers
The defendants argue that the number of hours must be reduced because they include time billed for multiple lawyers, all appearing for the same event even though only one may have taken an active role. By way of example, the defendants point to a March 2001 hearing on various pretrial motions in limine. Five lawyers appeared for the plaintiffs, even though only one (Mr. Hubbard) addressed the Court. A total of 48 hours of attorney time, at rates ranging from $410 to $535 per hour, was billed for this single event, for a total of $14,560. Other instances where four or even five attorneys billed for a single event are set forth in Exhibit 5 of the Defendants’ Appendix. I agree that these hours involving multiple timekeepers must be reduced.
The plaintiffs’ only response to this objection is that the defendants also used multiple attorneys. In order to meet the aggressive defense asserted by the opposition, they argue, they were required to staff the case in a similar fashion. There is no attempt made, however, to explain the roles of the different lawyers at a single event where only one attorney took an active part on behalf of the plaintiffs. This Court can see a reason why many attorneys may need to attend office conferences and meetings in preparation for a hearing; I also understand how a lawyer may need assistance from a colleague equally familiar with the case during a court hearing or even at a deposition. I fail to see any justification, however, for more than three lawyers appearing at any court hearing (including trial) or for more than two lawyers attending any deposition. Accordingly, I conclude that any hours or related expenses for attorneys beyond that number must be eliminated entirely from any fee award. Moreover, I conclude that the time billed by the third attorney at any court hearing (excluding trial, where three lawyers could be justified) should be discounted by 50 percent.[2]
D.Objections to Specific Attorneys
Defendants seek to exclude all time billed by attorney Ed Ricci who, other than being a partner in Mr. Hubbard’s firm, did not play any role in the case, at least as far as defense counsel could tell. The billing records submitted for Mr. Ricci’s time are indeed peculiar. See Exhibit 8 of Defendants’Appendix. Once a week between 1997 and 2000, he billed precisely the same amount of time (1.5 hours) for precisely the same task, described generally as “Research, Organization and Strategic Planning.” Thereafter, the entries are more varied with regard to the amount of time spent but the descriptions are no more helpful: they are for “Case Management,” “Trial Research,” or consultation, review and advice. I conclude that these records are insufficient to support any award of fees to Mr. Ricci. Nor should the defendants be required to pay for any of his related travel or other expenses.
Similarly, the defendants ask that the time billed by attorney Peter Pease be excluded. See Exhibit 2, 36 of Defendants’ Appendix. Although the amount of time is relatively insignificant (8.5 hours) the hours billed by Mr. Pease do appear, from the descriptions given, to relate to tasks very peripheral to the litigation, and should not be counted. Similarly, if he billed for any expenses, those amounts should be excised from the expense calculation.
E.Miscellaneous Objections
In addition to the objections described above, the defendants argue that other time billed by the plaintiffs’ lawyers was for work which was unnecessary or excessive. This Court, however, is not willing to second-guess counsel as to how much time the lawyers needed to prepare for and research any given issue in the case. Nor is it worth the Court’s time to dissect every entry in these voluminous records to determine whether the work as described was required or not, particularly in the circumstances of this case. As noted above, counsel for the defendants also put in an enormous amount of time and mounted an aggressive defense. “A parly cannot litigate tenaciously and then be heard to complain about the time necessarily spent overcoming its vigorous defense.” City of Riverside v. Rivera, 477 U.S. 561, 580, n.11 (1986), quoting Copeland v. Marshall 641 F.2d 880, 994 (D.C.Cir. 1980).
Moreover, the plaintiffs have submitted detailed time records in support of the Application, and this Court sees no reason why it should not accept at face value counsel’s representations that the hours billed here in fact represent hours worked. Thus, for example, this Court does not exclude billing for travel time, where plaintiffs’ counsel has represented to this Court that such time was billed only when counsel in the course of that travel actually worked on this case. Nor would it be justified to exclude from the calculation the time spent researching legal issues connected to this Application. Although this Court’s opportunity to actually see counsel in action in this case was considerably more limited than that of Judge Toomey, it was quite apparent that plaintiffs’ lawyers in this case were of a high caliber and of great integrity, representing their clients skillfully and obtaining for them a good result. Any further reduction in the number of hours would not be warranted.
II. The Reasonableness of the Hourly Rate
The defendants raise two objections with regard to the hourly rate. First, without specifically arguing the issue, the defendants have segregated the time of plaintiffs’ counsel into “core” and “non-core” ser *96 vices, seeking a reduction in the hourly billing rate across the board for the “non-core” services. See Exhibits 6 and 7 of Defendants’Appendix. Although it is accepted practice in some federal courts to draw this distinction, Massachusetts courts have not thus far recognized a difference between core and non-core services in determining awards under other fee-shifting statutes. See e.g. Roberts v. Dept. of State Police, 2002 WL 31862711, 15 Mass. L. Rptr. 462 (Mass.Super. 2002), citing Connolly v. Harrison, 33 F.Sup.2d 92, 96 (D.Mass. 1999). I decline to do so in this case.
The defendants’ second objection has merit, however: They argue that the hourly rate billed by most of the plaintiffs’ lawyers exceeds the market rate for lawyers in the Worcester area and should be reduced. The plaintiffs agree that the correct measure for determining the hourly rate in fee shifting cases is “the prevailing market rates in the relevant community.. . for similar services by lawyers of reasonably comparable skill, experience and reputation.” Blum v. Stenson, 465 U.S. 886, 895-96 (1984). As a general rule, the “relevant community” is the community where the case is litigatedin this case Worcester. Affidavits submitted by prominent and experienced Worcester attorneys suggest that the local hourly rates for senior litigators at the time these fees were incurred ranged from $200 to $350. Many of the rates in the Application, however, exceed even the top range of this stated hourly rate. For example, Mr. Hubbard and Mr. DeValerio (regarded as lead counsel in trial or pretrial proceedings) bill their time at $500 an hour. Other lawyers in their offices bill at $410 an hour, as did local counsel Francis Ford.
The plaintiffs contend that the higher rates are justified because this lawsuit involved specialized skills which could not be replicated if only local counsel had been retained. They note that it is rare indeed for any state court case in Massachusetts to proceed as a class action, and contend that the complex nature of the issues required the plaintiffs to seek representation from attorneys with a national litigation practice. Although the plaintiffs’ lawyers certainly deserve credit for winning class certification (and will be compensated for every hour of time spent in connection with that effort), the legal claims asserted were not that complex. They were for breach of contract and Chapter 93Amatters of state law which experienced Worcester counsel would have been quite competent to litigate. Accordingly, I conclude that the hourly rate for Mr. Hubbard and Mr. DeValerio should be limited to $350. Those attorneys in the Application with a stated hourly rate of $410 should be compensated at the rate of $300 an hour. The hourly rate for all other attorneys shall not exceed $250 an hour.
III. Plaintiffs’ Entitlement to Lodestar Multiplier
In addition to seeking attorneys fees which exceed $4 million in this case, plaintiffs counsel ask this Court to multiply any award by a factor of 2 to 2.5. This the Court declines to do. As the Supreme Judicial Court stated in Fontaine v. Ebtec Corp., supra, such a fee enhancement should be made only in very limited circumstances. Although the risk of nonpayment in this case was certainly present (as it is in most litigation) this case did not, in this Court’s view, involve any novel issues of law nor does it implicate the public interest. At stake was compensation for a group of independent brokers working on a commission basis for an insurance company. That the defendants were corporations and the plaintiffs individuals does not convert this litigation into one with implications beyond the interests of those who are parties to this case.
IV. Expenses and Interest
This topic requires little discussion. Under G.L.c. 93A, 11, plaintiffs’ counsel is entitled to be reimbursed for all reasonable out-of-pocket expenses. To the extent that this Court has determined that certain hours spent by certain attorneys should not be included in the calculation (for example, hours of work billed by Mr. Ricci), then the expenses incurred in connection with those hours should also be eliminated from the calculations regarding disbursements. Other than that, this Court is satisfied with the expense records that plaintiffs have provided in support of their request and concludes that no further reduction is required. It also determines that plaintiffs are entitled to interest on the award of attorneys fees and expenses computed from the date that judgment enters on the 93A claim. G.L.c. 231, 6(c).
CONCLUSION AND ORDER
For all the foregoing reasons, it is hereby ORDERED that plaintiffs submit an Amended Application, reducing the number of hours in line with the Court’s conclusions outlined in Part I of this Memorandum, and then multiplying those hours by the hourly rates set forth in Part II. If the defendants are satisfied that all the amendments have been properly made in accordance with this opinion, and no further clarification is required from this Court as to damages, attorneys fees or interest, then the parties shall confer and submit a Proposed Order of Judgment for this case so that this matter can be concluded (at least at the trial court level).

That they have not received an accounting from plaintiffs’ counsel as to time spent in the other cases does not mean that these records are somehow deficient.

As to appearances before the Special Master, this Court regards that time as equivalent to a Court appearance.