Nickerson, Gary A., J.

INTRODUCTION

The Plaintiff, Northern Security Insurance, sought a declaration pursuant to G.L.c. 231A as to whether the policy it issued to one of the defendants, the Sandpiper Village Condominium Trust, provided coverage in an underlying lawsuit, and if so, the extent of the reasonable attorneys fees incurred by the Defendants. The defendants have counterclaimed for declaratory judgment and attorneys fees, and have further asserted that the Plaintiff violated G.L.c. 93A and G.L.c. 176D. This matter is before the Court on the Defendants’ motion for summary judgment and the Plaintiffs cross motion for summary judgment. For the reasons discussed below, both motions are allowed in part and denied in part.

BACKGROUND

The undisputed facts and the disputed facts viewed in the light most favorable to the non-moving party as revealed by the summary judgment record are as follows. In early 2000, the Sandpiper Village Condominium Trust assessed a $1,000 fine on a unit owner after a pipe burst in her unit damaging another unit and the condominium’s basement.[2] The $1,000 assessment reflected the insurance deductible for the repair work. The unit owner refused to pay and the trust placed a lien on her unit. After the unit owner paid the $1,000 assessment, the trust refused to release the lien because of $17,000 in attorneys fees and costs. Ultimately, the unit owner paid the additional $17,000 under protest.
Litigation commenced in the Massachusetts District Court and the unit owner and the trust entered a stipulation of dismissal, with prejudice. Nonetheless, in April 2004, the unit owner commenced an action in the Massachusetts Superior Court against the condominium trust, the trustees, and the properly manager, Andrew Witter.[3] The instant case largely turns upon the allegations within the unit owner’s complaint. The complaint included five counts: Count I - negligence based upon the trust exceeding its authority: Count II - negligence based upon the trust’s invalid and improper regulation of an interior unit; Count III - negligence based upon the trust having insufficient evidence to determine whether a violation of the temperature rule caused the pipe to burst; Count IV - negligence against Witter for lack of authority to assess a fine; and Count V - against Witter for unfair deceptive acts and practices. Of note, in Count III, the unit owner alleged that the trustees breached their fiduciary duty to her. Upon receipt of the complaint, the trust forwarded the complaint to its insurer, Northern Security Insurance.
The trust holds an insurance policy issued by Northern Security Insurance Company showing Sandpiper Village Condominium Trust as the insured on the declarations. The policy includes a Commercial General Liability Coverage Form and a Directors and Officers Liability Endorsement.
The relevant portions of the CGL Form provide:
1. Insuring Agreement
a. [Northern Security] will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies. We will have the right and duty to defend the insured against any “suit” seeking those damages. However, we will have no duty to defend the insured against any “suit” seeking damages for “bodily injury” or “property damage” to which this insurance does not apply. We may, at our discretion, investigate any “occurrence” and settle any claim or suit that may result
b. This insurance applies to “bodily injury” and “property damage” only if: ■
(1) The “bodily injury” or “property damage” is caused by an “occurrence” that takes place in the “coverage territory,” and
(2) The “bodily injury” or “property damage” occurs during the policy period.
17. “Property damage” means:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the “occurrence” that caused it.
13. “Occurrence” means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

SECTION II - WHO IS AN INSURED

2. Each of the following is also an insured:
b. Any person (other than your “employee”), or any organization while acting as your real estate manager.
The relevant portions of the Directors and Officers Endorsement provide:
1. [Northern Security] will pay those sums you become legally obligated to pay as damages arising out of any negligent act, error, omission or breach of duly directly related to the management of the premises, shown in the Declarations. This endorsement applies to any negligent act, error, omission or breach of duty which:
a. Occurs during the policy period; or
b. Occurred prior to the policy period where:
*502 (1) At the effective date of this endorsement you had no knowledge or could not have reasonably foreseen any circumstance which might result in a claim or suit, and
(2) There is no other insurance applicable to such negligent act, error omission or breach of duty . . .
3. Persons Insured. Each of the following is an insured with respect to this coverage, but only to the extent set forth below:
a. Your directors and officers, but only while acting within the scope of their duties for you.
b. You with respect to your liability for the negligent act, error, commission or breach of duly committed by an officer or director.
c. All persons, past or present, their estates, guardians or legal representatives who were directors or officers of at the time of the negligent act, error, omission or breach of duty.
The summary judgment record consists largely of letters exchanged between Northern Security and the Trust’s attorney after Northern Security received the complaint. In a letter dated May 13, 2004, Northern Security agreed to assume the defense of the condominium trust and the trustees under a reservation of rights. Northern Security further specified an attorney to whom it would assign the defense. In a separate letter dated May 13,2004, Northern Security indicated that it would not provide a defense to Witter because he did not qualify as an insured under the endorsement. A week later, however, in a letter dated May 20, 2004, Northern Security agreed to include Witter under a similar reservation of rights and subject to several additional conditions.
In a letter dated June 18, 2004, the trust’s attorney responded to Northern Security’s offer by claiming that Northern Security could not appoint an attorney because it had agreed to provide a defense under a reservation of rights. In a letter dated July 1, 2004, Northern Security confirmed that it would only provide representation under a reservation of rights and reversed its position by refusing to provide Witter any defense. Northern Security did accept the trust’s election to use its own attorneys but stated that it was only obligated to pay reasonable attorneys fees. Northern Security went on to state that $150 per hour was reasonable based upon the case and in consideration of the legal market in Plymouth and Barnstable Counties. Northern Security also stipulated that the Defendants’ acceptance and negotiation of the checks would not foreclose either party from asserting a right to reimbursement at either above or below the $150 rate.
On July 26, 2004, the trust sent Northern Security a demand letter pursuant to G.L.c. 93A asserting that Northern Security’s failure to advise it of its right to select its own counsel when providing a defense under a reservation of rights violated G.L.c. 93 and G.L.c. 176D. The trust further alleged in the letter that Northern Security’s offer to pay a portion of the bill subject to resolution “down the road” violated G.L.c. 93A and G.L.c. 176D.
One of the defendants in the instant case, Marcus Errico Emmer & Brooks, provided the defense in the underlying case and effectively obtained an order of dismissal in the Barnstable Superior Court. Included in the record is an itemized list containing 76.85 billable hours amounting to $15,563.00 from that case. Also included is an itemized list containing 188.45 billable hours equal to $36,056.75 from the instant case.

DISCUSSION

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to a judgment as a matter of law. MassR.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving parly bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Commc’n Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Prior to the Court considering the parties’ claims for declaratory judgment, the Court first considers the defendants’ argument that Northern Security cannot disclaim liability because it attempted to “control” the litigation. “(A]n insurer’s defense of its insured pursuant to a reservation of rights [does] not estop the insurer from subsequently disclaiming liability because the insured has been put on notice of such possible disclaimer and could thus take necessary steps to protect its rights.” Sullivan v. Utica Mut. Ins. Co., 439 Mass. 387, 406 (2003). An insurer, however, may not simultaneously maintain control of the litigation. Id. “When an insurer seeks to defend its insured under a reservation of rights, and the insured is unwilling that the insurer do so, the insured may require the insurer either to relinquish its reservation of rights or relinquish its defense of the insured and reimburse the insured for its defense costs.” Id. at 406-07.
The defendants argue that when Northern Security fixed an arbitrary rate of $150 per hour on attorneys fees and imposed unreasonable billing and reporting requirements, it was attempting to control the litigation. It was not until the trust’s June 18th letter that the “insured . . . require[d] the insurer either to relinquish its reservation of rights or [to] relinquish its *503 defense . . . and reimburse the insured for its defense costs.” Id. at 406-07. Upon receipt of that letter, in its July 1st letter, Northern Security did impose a $150 rate as one that it determined to be reasonable. Northern Security also stipulated that the trust’s acceptance of that rate would not foreclose either party from seeking reimbursement at a different rate. Under a reservation of rights, Northern Insurance was bound to pay the defendants’ reasonable attorneys fees. Magoun v. Liberty Mut. Ins. Co., 346 Mass. 677, 685 (1964) (requiring insurer “to pay the reasonable charges of [the insured’s] counsel, who provided, with at least [the insurer’s] acquiescence, the defense that [the insurer] was bound to furnish”). As discussed infra, whether the $150 hourly rate proposed by Northern Security or the rates actually charged by Marcus Errico Emmer & Brooks PC are reasonable is in dispute. The Court concludes that an insurer is not attempting to control the litigation when it specifies an hourly rate that it believes to be reasonable, particularly when it stipulates that the insured may seek reimbursement at a higher rate. Therefore, Northern Security is not estopped from disclaiming coverage.
Northern Security claims on summary judgment that it is entitled to a declaration that the policy does not cover the defense of either the trust or Witter. There are two portions of the policy at issue and the Court will address each in turn.
The Court concludes that the terms of the Directors and Officers Liability Endorsement triggered Northern Security’s duty to defend the trust. Absent an ambiguity, courts will “construe the words of an insurance policy according to their ordinary meaning.” Cardin v. Royal Ins. Co., 394 Mass. 450, 453 (1985). The endorsement provides that the insurer shall be “legally obligated to pay as damages arising out of any negligent act, error, omission or breach of duty directly related to the management of the premises.” Here, the unit owner alleged in the complaint that the trust and Witter were negligent and that the unit owner suffered damages as a result. Further, the unit owner alleged that the trust had breached its fiduciary duly. As articulated by the Supreme Judicial Court, “[t]he underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage. There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage.” Sullivan, 439 Mass. at 394, quoting Sterilite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316, 319 (1983).
Northern Security concedes that the unit owner framed several of the complaints in negligence. It notes, however, that the Court in Sullivan qualified its assertion by stating that “when the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant.” 439 Mass. at 395, quoting Timpson v. Transamerica Ins. Co., 41 Mass.App.Ct. 344, 347 (1996). Further, Northern Security contends that the source of the injury rather than the theories determines the duly to defend on behalf of an insurer. “It is the source from which the plaintiffs personal injury originates rather than the specific theories of liability alleged in the complaint which determines the insurer’s duty to defend.” Victim v. Monticello Ins. Co., 430 Mass. 454, 458 (1999) (emphasis in original), quoting New England Mut. Life Ins. Co. v. Liberty Mut. Ins. Co., 40 Mass.App.Ct. 722, 727 (1996). The Court in Monticello, however, was reviewing an underlying complaint in the context of an exclusion pertaining to an illegal act. Id. at 457 (exclusion of any claim which “arises wholly or in part out of an illegal act”). Here, there is no similar exclusion. Certainly the claim that the trust breached its fiduciary duty brings the underlying claim within the liberal standard announced in Sullivan. The allegations in the complaint do not “lie expressly outside the policy coverage and its purpose.” Sullivan, 439 Mass. at 395.
Northern Security next argues that the endorsement only applies to damages and that the $18,000 sought by the unit owner was merely restitution. To this end, the endorsement includes an exclusion providing that coverage “does not apply to claims for anything other than money damages.” Northern Security cites 116 Commonwealth Condo. Trust v. Aetna Cas. and Sur. Co. in which the Supreme Judicial Court interpreted a similar clause to prevent a similar claim. 433 Mass. 373, 377 (2001) (“This insurance does not apply to any claim ... for anything other than money damages”). The Court in 116 Commonwealth, however, merely held that there could be no expectation “that the policy would cover an action for injunctive relief that did not seek money damages.” Id. Further, “[t]his Commonwealth defines damages as ‘the word which, expresses in dollars and cents the injury sustained by the plaintiff.’ ” Id., quoting Turcotte v. DeWitt, 333 Mass. 389, 392 (1995). Here, included in the $18,000 sought by the unit owner was the $1,000 assessment. This Court concludes the underlying claim was indeed a claim for damages, as that word is used in the policy.
While the Court concludes that the trust was entitled to a defense under the Directors and Officers Endorsement, the Court does not conclude that Witter was entitled to a defense pursuant to the endorsement. Northern Security concedes that Witter is an additional insured under the CGL.[4] Northern Security, however, correctly argues that Witter does not fall within the definition of “you” in the endorsement. The endorsement provides in part that a person insured is “|y]ou with respect to your liability for the negligent act, error, omission or breach of duty committed by an officer or director.” The policy further provides that the “the words “you’ and ‘your’ refer to the Named Insured shown in the Declarations, and any other person or *504 organization qualifying as a Named Insured under this policy.” In Jacobs v. United States Fidelity & Guaranty Co., an injured pedestrian sought recovery from his employer pursuant to the employer’s coverage to “the named insured, if injured as a pedestrian or while occupying an automobile not owned by the named insured.” 417 Mass. 75, 76 (1994). The Court held that a “ ‘[n]amed insured’ has a clear and explicit meaning. It is the individual entity who is listed on the declarations page. We need not substitute the definition favored by the plaintiff to give ‘a reasonable meaning to’ or explain the provision.” Id. at 78. The policy is unambiguous in that Witter was not a named insured thereby failing to qualify as a person insured under the endorsement.
Moving on to coverage under the CGL, as described supra, the policy provides that the trust is a named insured and that Witter is an additional insured under the CGL.[5] Northern Security, however, argues that the unit owner’s attempts to recover the fees she incurred were not an “occurrence” within the meaning of the policy. The CGL provides that properly damage is “[plhysical injury to tangible property” and an “ ‘[o]ccurence’ means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” The cases cited by Northern Security in which the Court found that there was no “occurrence” are clearly distinguishable. See Rideout v. Crum & Forster Commercial Ins., 417 Mass. 757, 763 (1994) (acts of discrimination by insured resulting in lost wages not an occurrence); Smartfoods, Inc. v. Northbrook Prop. and Cas. Co., 35 Mass.App.Ct. 239, 242 (1993) (act of terminating distribution agreement by insured resulting in lost damages to distributors not an occurrence); City of Newton v. Norfolk & Dedham Mut. Fire Ins. Co., 26 Mass.App.Ct. 202, 202-03 (1988) (act of setting fire by insured resulting in damage to a school not an occurrence). Here, the $1,000 assessment which forms the basis of the suit was issued as a result of property damage caused by the unit owner. This falls within the provisions of the CGL. Therefore, the Court concludes that the defendants are entitled to a declaration that the policy provided coverage to the trust under both the endorsement and the CGL and to Witter pursuant to the CGL.
Next, the Court considers the defendants’ argument on summary judgment that the Court should require Northern Security to pay the $15,563.00 in attorneys fees incurred by Marcus Errico Emmer & Brooks in the underlying case. The question of reasonable attorneys fees is a question left up to the sound discretion of the judge. Berman v. Linnane, 434 Mass. 301, 302-03 (2001), citing McGrath v. Mishara, 386 Mass. 74, 87 (1982). In making that determination the Court considers, “the nature of the case and issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.” Id. at 303, quoting Linthicum v. Archambault, 379 Mass. 388-89 (1979). The defendants point to Marcus Errico Emmer & Brooks’ experience representing condominium associations and note that they successfully obtained a rare motion for reconsideration in the underlying case. In the instant case, however, the issue of “reasonableness,” is a genuine issue of material fact inappropriate on summary judgment.[6]
The same is true for the $36,056.75 incurred by the defendants in the instant case. The Court acknowledges that “the insured deserves reimbursement for his reasonable outlay ‘in successfully establishing the insurer’s duty to defend under the policy.’ ” Hanover Ins. Co. v. Golden, 436 Mass. 587-88, (2002), quoting Rubinstein v. Royal Ins. Co. of Am., 429 Mass. 355, 359 (1999). A determination of whether $36,056.75 is a reasonable outlay, however, is not appropriate on summary judgment.
Finally, the defendants argue for summary judgment on their counterclaim that Northern Security violated G.L.c. 93A and G.L.c. 176D. They further contend that they are entitled to treble damages in the amount of $46,089.00 as a result. “An insurance company which in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy cannot ordinarily be said to have committed a violation of G.L.c. 93A.” Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 468 (1995).
Here, defendants argue that Northern Security acted unfairly and deceptively in denying coverage to Witter by misrepresenting that Witter did not satisfy the criteria of being an insured. In its letter dated May 13, 2004, however, Northern Security merely explained its reasons for denying coverage to Witter. The defendants emphasize that Northern Security acknowledged that Witter was a real estate manager and that they illogically denied him coverage. However, as discussed in detail supra, Northern Security argued that Witter qualified as an additional insured under the CGL but not as a named insured under the endorsement. In fact, the Court agrees with that interpretation.
Similarly, the defendants argue that Northern Security’s change in position from offering to represent Witter under a reservation of rights in its May 20th letter, to refusing to do so in its July 1st letter, amounted to retaliation. They allege that Northern Security retaliated because of the defendants’ rejection of Northern Security’s offer. As the defendants acknowledge, however, they rejected Northern Security’s offer. The defendants fail to cite any precedent requiring Northern Security to be bound to its original offer. In fact, both offers were consistent in that neither acknowledged that the policy provided any coverage to Witter.
*505 The defendants further argue that Northern Security’s failure to reimburse the defendants at $150 per hour with the expectation of litigating the balance amounted to a violation of G.L.c. 93A. Northern Security, however, properly notes that the defendants expressly rejected that option in their letter dated July 26, 2004. For the same reason, Northern Security’s failure to respond to the monthly invoices containing attorneys fees sent to Northern Security do not violate G.L.c. 176D.
Finally, the defendants argue that Northern Securiiy’s attempts to control the defense while simultaneously disclaiming liability under a reservation of rights violated G.L.c. 93A. As discussed supra, the Court concludes that Northern Security was not attempting to “control” the litigation within the meaning of Sullivan, and accordingly, concludes that there was no violation of G.L.c. 93A.

ORDER

For the foregoing reasons, it is hereby ORDERED that the Defendants’ motion for summary judgment is ALLOWED such that the Court DECLARES that the policy provides coverage to the Defendants. The Defendants’ motion for summary judgment is DENIED as to a determination of attorneys fees and DENIED as to the counterclaim alleging a violation of G.L.c. 93A. The Plaintiffs motion for summary judgment is ALLOWED as to the Defendant’s counterclaim pursuant to G.L.c. 93A, but is otherwise DENIED.

The trust issued the fine pursuant to a condominium regulation prohibiting unit owners from “winterizing” their units and/or maintaining the temperature in their units below fifty degrees Fahrenheit.

OnMay 25, 2006, the Barnstable Superior Court granted the defendants’ motion for reconsideration and dismissed the unit owner’s complaint pursuant to Mass.R.Civ.P. 12(b)(6).

The CGL provides that an insured is also “(a]ny person (other than your ‘employee’), or any organization while acting as your real estate manager.”

See supra note 4 and accompanying text.

The Court declines to reach the argument regarding whether the Court should only consider the usual price charged for similar services by other attorneys in the same area in place of the usual price paid by insurance companies to other attorneys for similar services in the same area. See Watts Water Technologies, Inc. v. Fireman’s Fund Ins. Co., No. 05-2604-BLS2, 2007 Mass.Super. Westlaw 2083769, at *11 (Gants, J.) (July 11, 2007) [22 Mass. L. Rptr. 659].