Fremont-Smith, Thayer, J.
This case was tried juiy-waived December 19 through December 22, 2008. Based on all of the credible evidence, the Court makes the following findings and rulings.
A suit was brought by three members of the Niininen family claiming respiratory problems as the result of mold exposure experienced at an apartment in Lexington occupied by the Niininens and owned by the Northern Security’s insured, R.H. Realty Trust (“the Trust”).[1] The suit alleged that mold caused the daughter to receive extensive medical care and caused her to miss substantial periods of time from school, requiring tutoring. Ultimately, the family was required to move into a hotel until they could find other living quarters.
Northern Security acknowledged an obligation to defend with regard to the negligence allegations, but denied there was coverage or an obligation to defend with regard to the allegations of a violation of M.G.L.c. 93A.
When the Trust rejected the offer to defend it under a reservation of rights, Northern Security agreed that the insured was entitled to select counsel of their own choosing and that Northern Security was obligated under the insurance policy to pay such counsel’s reasonable attorneys fees and costs incurred in their defense.
The Trust then retained Attorney William J. Dailey, Jr. of Sloane & Walsh and agreed with him that he would be paid for his time at an hourly rate of $225.[2]
Northern Security took the position that the reasonable hourly rate for the services to be rendered by the firm of Sloane & Walsh in the defense of the insureds in the action, including Dailey’s services, was $150, and it agreed to pay that amount. It acknowledged that the Trust and the firm of Sloane & Walsh disagreed as to what constituted a reasonable hourly rate for the defense, and expressly agreed that, by accepting and negotiating the checks which it sent to Sloane & Walsh in payment of the firm’s services, neither Sloane & Walsh nor the insureds would be deemed to have waived any claim they might have for payment of sums greater than those deemed reasonable and paid by Northern Security. Northern Security also expressly agreed that, at the conclusion of the action, Sloane & Walsh or the insured could assert the right to, and bring suit for, reimbursement at an hourly rate greater than that to which Northern Security had agreed; and *186 that Northern Security would not assert or claim that Sloane & Walsh’s acceptance and negotiations of the checks sent to it precluded or foreclosed it or the insured from doing so.
Sloane & Walsh rejected Northern Security’s offer and insisted that Attorney Dailey’s services be paid for at a $225 hourly rate.
During the defense of the Trust in the Niininen action, when Sloane & Walsh submitted invoices to Northern Security for services rendered, Northern Security did not pay the full amount of the invoices, but after considerable delay, paid the $150 hourly rate. The total amount of Sloane & Walsh’s invoices was $42,528.22, and Northern Security forwarded to Sloane & Walsh checks totaling $29,669.22 (reflecting payments at an hourly rate for Dailey’s time of $150), a difference of $12,860 from the amount invoiced at Dailey’s $225 hourly rate.
Sloane & Walsh and Northern Security’s attorneys jointly engaged in extended settlement discussions with the plaintiffs’ attorney regarding the resolution and settlement of the Niininen action, resulting in successive reductions by the Niininens in their demands and culminating in a settlement of the plaintiffs’ claims by Northern Security’s payment of $75,000 in return for the plaintiffs’ release of all claims against the Trust.
Northern Security then commenced this action for declaratory judgment to obtain a declaration that $ 150 was a reasonable hourly rate for Dailey’s services in defending the Trust, and Sloane & Walsh counterclaimed for payment of Dailey’s time at $225 an hour.
During the period of the underlying action against the Trust, from 2002 to 2004, the hourly rates usually paid by Northern Security to the attorneys whom it customarily retained to represent its insureds in the Boston and Cambridge areas were in the range of $ 100 to $140, depending upon the ability and experience of the attorney. The substantial volume of work Northern Security assigned to the attorneys it customarily retained to represent its insureds, however, affected the hourly rate that those attorneys were willing to take, so that those hourly rates are not good indicators of what was a reasonable hourly rate to be charged by an attorney, such as Dailey, who was not customarily retained by Northern Security.
In determining what was the reasonable rate which Northern Security should have paid for Dailey’s services, it is not disputed that, because Northern Security issued a reservation of rights letter, it was required to pay the cost of a defense attorney of the insured’s own choosing to prevent a conflict of interest and was required to relinquish control of the defense. Herbert A. Sullivan, Inc. v. Utica Mutual Insurance Co., 429 Mass. 387, 406-07 (2003). See also Three Sons, Inc. v. Phoenix Ins. Co., 357 Mass. 271, 276 (1970) (“We are not to be understood as holding that an insurer may reserve its rights to disclaim liability in a case and at the same time insist on retaining control of its defense”), Watts Water Technologies, Inc. v. Fireman’s Fund Insurance Co., (Mass.Super.Ct. July 11, 2007) [22 Mass. L. Rptr. 659], 2007 WL 2083769, *6 (“[W]hen an insurer chooses a reservation of rights, it loses its ability to control the defense but retains, as part of its duty to defend, the obligation to pay the reasonable charges of the insured’s counsel, who provided the defense that the insurer was bound to furnish”) (Gants, J., quoting Magoun v. Liberty Mutual Insurance Co., 346 Mass. 677, 685 (1964)).
In Magoun, the Court held that where
the agreed facts reveal no agreement or reservations concerning the costs of the independent defense and [bjecause [the insurer] could have included in the covenant to defendant explicit provisions concerning the cost of defense in various situations ... we think that uncertainty should be resolved against the insurer. Accordingly, we hold that in the circumstances, the covenant to defend is broad enough to require [the insurer] to pay the reasonable charges of [the insured’s] counsel, who provided, at least with [the insurer’s] acquiescence, the defense that [the insurer] itself was bound to furnish.

Id.

It is clear that in Massachusetts an insurer cannot insist on the hourly rates it customarily pays to its own panel of attorneys. As Judge Gants unequivocally ruled, the insured was entitled to have reasonable fees paid, based on market rather than panel rates. Watts Water Technology, supra, at **8-11. There, Judge Gants stated:
One of the Linthicum factors is the “usual price charged for similar services by other attorneys in the same area.” This factor may not fairly be understood to mean the usual price paid by insurance companies to other attorneys for similar services in the same area. Insurance companies, for at least two reasons, may often pay less than “the usual price charged for similar services by other attorneys in the same area.” First, since they retain so many attorneys in so many cases, they have the leverage to obtain billing rates lower than the usual rates charged by law firms, since many firms are willing to reduce their rates in return for the hope or promise of obtaining a substantial volume of legal work. An insured retaining its own attorney will not generally possess this “buying power.” Second, insurance companies in many cases that are routine to them (albeit perhaps not routine for their insureds) may prefer lower priced attorneys if they determine that the savings in legal costs will exceed any anticipated increase in damages they must pay on behalf of their insureds. An insured, who is looking at its own risk if the insurer that has reserved its rights ultimately refuses to pay damages, may wish to pay more in legal fees to minimize *187 the risk of a substantial damage judgment, especially if that insured is risk averse.
Id. at *10.
Where, as here, fees are involuntarily imposed, “[w]hat constitutes a reasonable fee is a question that is committed to the sound discretion of the judge.” Berman v. Linnane, 434 Mass. 301, 302-03 (2001). Moreover
When determining a reasonable attorneys fee, the focus is not the bill submitted or the amount in controversy . . . but several factors, including the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for a similar service by other attorneys in the same area, and the amount of awards in similar cases. No one factor is determinative, and a factor-by-factor analysis, although helpful, is not required.
Id. at 303 (citations and quotation omitted). Accord: Cummings v. National Shawmut Bank, 284 Mass. 563, 569 (1933); Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979). See also Blum v. Stenson, 465 U.S. 885, 895-96 (1984) (“reasonable fees under [civil rights statute] are to be calculated according to the prevailing market rates in the relevant community . . .”).
William J. Dailey, Jr., the attorney at Sloane & Walsh who represented the Trust in the underlying action, is the senior partner at Sloane & Walsh, where he has been a trial attorney for the past forty years. He received his law degree from the Georgetown University Law Center in 1963, is a Fellow of the American College of Trial Lawyers, an “AV” rated attorney in the Martindale-Hubbell Directoiy, and has been frequently requested by judges and fellow attorneys to appear in trial advocacy legal education programs over the years.
I personally litigated commercial cases in the private sector in Boston from 1963-1993 and know that the hourly rates customarily charged in the Boston area by litigating partners of Dailey’s ability and experience as long ago as 1993 (when I left private practice) were over $300 an hour.
Michael E. Mone of Esdaile, Barrett & Esdaile, testifying as an expert, opined that a reasonable hourly rate charged in the Boston area by trial attorneys of Dailey’s experience and ability today ranges from $225-$500 an hour.[3]
Indeed, $385 an hour was the hourly rate actually charged by Sloane & Walsh for Dailey’s time in seven of the twenty other cases in which Dailey has recently undertaken the representation of an insured under a reservation of rights. In nine other such cases he has charged $315 an hour.
I interpret Judge Macdonald’s rulings in 2005 and 2006 in this case, moreover, that “$225 per hour is per se reasonable” as indicating only that he considered such a fee, which was the amount which Dailey had, as an accommodation to his client, requested, as being, in Mone’s words, at the “low end” of what is reasonable, and not intended as a finding that it was the only, or most reasonable, hourly rate. Based upon Mone’s testimony, the similar testimony of Paul A. Fitzgerald,[4] my own knowledge and observations[5] and all of the credible evidence, I find that the fair and reasonable hourly rate for Dailey’s services was $350.[6]
Comparable fee awards have long been approved in the Boston market. See e.g. Visiting Nurses Association of North Shore, Inc. v. Bullen et al., (D.Mass., 1995) LEXIS 21935 at *15 (awarding hourly fees for partners of $345 and $320 for associates for services rendered in 1994-1995); Arthur D. Little, Inc. v. Dooyang, 995 F.Sup. 217, 217-24 n.1 (D.Mass. 1998) (awarding rate of $325 per hour for services provided by partner with thirty years experience); Gruckenberger v. Boston University, 8 F.Sup.2d 91, 108 (D.Mass. 1998) (awarding an hourly rate of $275 per hour to a partner with twenty years experience for legal services performed in 1996-1998); Yankee Candle Co. v. Bridgewater Candle Co., LLC, (D.Mass. 2001) 140 F.Sup.2d 111, 123-24 (approving $320 to $325); and Eldridge v. Provident Companies, Inc. (Mass.Super. 2004) 18 Mass. L. Rptr. 91, 99 (approving $350 for plaintiffs’ counsel in class action).[7]
Accordingly, the Court finds that Sloane & Walsh is entitled to be paid an additional award for Dailey’s services computed by multiplying the total number of hours he worked by $200 (the difference between what he was paid at $150 and what he should have been paid at $350). As a perusal of the “billing summaries” in Sloane & Walsh’s invoices indicates that Dailey expended 141.90 hours working on the Niininen case, Sloane & Walsh is entitled to an additional fee of $28,380.
C. 93A
Northern Securify agreed to pay Sloane & Walsh only at the rate of $150 per hour, agreed that the acceptance and negotiations of any checks it sent reflecting that hourly rate would not constitute a waiver or estoppel preventing Sloane & Walsh or the Trust from asserting that Northern Security should pay a higher amount, and agreed that, once the underlying action had concluded, the Trust or Sloane & Walsh could institute suit to recover a higher fee.
The Court concludes that these actions of Northern Security do not, in and of themselves, constitute a violation of M.G.L.c. 93A or of the policy of insurance Northern Security issued to R.H. Realty Trust. See Northern Security Ins. Co. v. Sandpiper Village Condominium Trust, (Mass.Super.Ct., 2008, Nickerson, J.), 24 Mass. L. Rptr. 500. Nevertheless, Northern’s conduct can be viewed to have been unfair in other respects. The first notice from the insurer and its attorney stated that a reservation of rights was being *188 put in place by the insurer and the letter further indicated the case was being assigned to counsel selected by the insurer from its own panel of attorneys. No disclosure was made regarding the right of the insured to retain its own counsel because of the reservation of rights. Only when the insured gave notice of its intent to retain counsel of its own choosing and that it had retained the firm of Sloane & Walsh,[8] did Northern respond by stating it would pay only $150 per hour to counsel retained by the insured. Additionally, the insurer indicated the insured would have to bring a lawsuit if it wished to be compensated at a greater hourly rate for the attorney the insured had retained. The insurer further set forth a number of requirements in regards to the insured’s attorney’s reporting obligations.
Then, after the insured had selected its own counsel and the underlying case was being actively litigated, Northern neglected to make any payments to Sloane & Walsh on the bills it submitted for over a year at even the lower amount of $150 per hour to which it had agreed. The first bill submitted was not paid for fourteen months and the next payment was not made until six months after that. It also delayed for a considerable time to pay the fees of stenographs and of experts retained by Dailey on behalf of the insured.
In short, Northern did not timely pay the bills of the attorneys, experts or court reporters retained to assist in the defense of the insured, even though it was informed that the attorneys, experts and court reporters were becoming upset, and that the failure of the insurance company to pay the bills was compromising Sloane & Walsh’s ability to conduct an appropriate defense.
While the above practices were arguably violative of c. 93 and c. 176D, the insurer violated those statutes in other, more definitive ways.
M.G.L.c. 176D, §3(9)(f) provides that it is an unfair claim settlement practice to fail “to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.”
Northern Security’s liability to pay Sloane & Walsh at least $225 an hour for Dailey’s time became “reasonably clear” when Judge Macdonald ruled in 2005 and again in 2006 that $225 was per se reasonable. Even before Judge Macdonald’s 2005 ruling, moreover, Northern Security’s parent, Vermont Mutual Insurance Group, had been informed in 2003 by its Claims Manager that Northern Security’s outside counsel[9] “is now suggesting that we may want to consider paying Atty. Dailey at the rate of $225 per hour. His logic is that Attorney Dailey is a well known commodity in Boston and most, if not all, judges would agree that his rate of $225 per hour is reasonable.”
In another 2003 letter, Vermont Mutual’s General Counsel was told: “Rick Eurich opined that the courts will most likely find that Bill’s rate of $225 per hour is reasonable and as such, we will be faced with one of two choices: pay the difference or incur additional legal fees in fighting this issue. Rick felt that this would be a losing battle and we would end up paying the difference. As such, he suggested that we pay the rate of $225 in order to foster good relations with attorney Dailey and to extinguish the cost of additional litigation down the road over the disputed amount.”
It is true that there is “nothing immoral, unethical or oppressive” in an insurer reasonably and plausibly asserting a position which, at a later point in time, a court determines to have been incorrect. See Boston Symphony Orchestra v. Commercial Union Ins. Co., 406 Mass. 7, 14-15 (1989), citing P.M.P. Assoc. v. Globe Newspaper Co., 366 Mass. 593, 595-96 (1975); Gulezian v. Lincoln Ins. Co., 399 Mass. 606, 613 (1987); Guity v. Commerce Ins. Co., 36 Mass.App.Ct. 339, 343 (1994). Chapter 93A and Chapter 176D do not require that a position taken by an insurer be absolutely right; they require only that the insurer act reasonably. See Doc v. Liberty Mat Ins. Co., 423 Mass. 366, 372 (1996).
Here, however, Northern Security continued to pay Dailey his hourly rate even after, in Boston Symphony OrchestrcCs words, a Court (Macdonald, J.) had determined its position to have been incorrect. It is true that Judge Macdonald’s decision was interlocutory, and an insurer has a right to await the results of an appeal if it has a reasonable, plausible belief that the interlocutory order was erroneous. Cullen Enterprises, Inc. v. Massachusetts Property Ins. Underwriting Assoc., 399 Mass 886, 897 (1987). The Court finds, however, in the circumstances here, that Northern’s refusal to pay Dailey $225 an hour, after the Judge Macdonald rulings, and after Northern’s own counsel and Claims Manager had advised it that its position, in all likelihood, would be held to be erroneous, was not based on a reasonable or plausible belief.
It is also true that c. 176D, §3(9)’s recitation of unfair claim settlement practices refers to conduct of an insurer vis á vis its insured, and that Sloane & Walsh was not itself an “insured.” But the payment of a reasonable attorney fee was owed not only to Sloane & Walsh, but also to its insured, as the insured would otherwise become obligated to Sloane & Walsh for its unpaid reasonable legal fees up to $225 an hour. Indeed, the insurance policy itself required that Northern Security must “reimburse the insured for [the insured’s] defense costs.” As Northern Security’s obligation in this regard was owed not only to Sloane & Walsh, but primarily to the insured, the Court rules that the provisions of G.L.c. 176D, §3(9) apply to this obligation, so that Northern’s persistence in paying Sloane & Walsh’s invoices at the reduced rate of $150 for Dailey’s time violated c. 176D, §3(f).
G.L.c. 176D, §3(9)(h) also makes it an unfair practice to fail “to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.” Northern Security’s failure to respond with a reasonable settlement offer *189 to Sloane & Walsh’s and to the insured counsel’s[10] c. 93A demand letters, which were sent by Sloane & Walsh and also by counsel for the insured, was also an unfair claim settlement practice for the same reason. When Judge Macdonald ruled that $225 was, at a minimum, a fair and reasonable fee, and Sloane & Walsh offered to settle for this and for no more, Northern made no response and no counteroffer at all. The failure to negotiate at all must be viewed as a c. 93A violation in view of the fact that even an anemic settlement response is a 93A violation. See Hopkins v. Liberty Mutual Insurance Co., 434 Mass. 556, 567-68 (2001); Bobick v. United States Fidelity & Guaranty Co., 439 Mass. 652, 662 (2003).
Accordingly, the Court rules that Northern Security has violated c. 93A and c. 176D in the above respects, and is therefore liable under c. 93A for Sloane & Walsh’s reasonable attorneys fees incurred in the present action.[11]
ORDER FOR JUDGMENT
The Court declares that $350 an hour was the reasonable attorney fee which Sloane & Walsh was entitled to receive from Northern Security Insurance Company for the time spent by William J. Dailey in defense of the Niininen action. Accordingly, judgment shall be entered for Sloane & Walsh on its counterclaim against Northern Security Insurance Company in the sum of $28,380 plus interest and costs. In addition, the Court will award against Northern Security, Sloane & Walsh’s reasonable attorneys fees and costs under c. 93A incurred in litigating the present case.[12]
Except as noted above, all claims and counterclaims of the parties are DISMISSED.

Niininen et al. v. R.H. Realty Trust, Middlesex Superior Court Docket No. MICV2001-04126.

Dailey testified that $225 was an unusually low hourly rate for him but that he agreed to it because he was a friend and neighbor of the insured’s trustees.

Attorney Mone opined that the rate at which Dailey agreed to represent the Trust was “extremely reasonable — it’s the low end of what is reasonable, and the fact that you can get someone of Mr. Dailey’s abilities and Mr Dailey’s reputation to defend a case for $225 an hour, it seems to me is remarkable, so yes, I would absolutely believe that that rate is more than reasonable.”

FItzgerald has long experience in the insurance industry and was a Senior Claim Supervisor of The Hartford Insurance Group. He opined that Northern Security’s refusal to pay Dailey $225 in the circumstances here was a breach of good and accepted standards of procedure for liability insurers in handling claims under a reservation of rights.

I had an excellent opportunity to observe Dailey’s legal abilities in action during the two long jury trials in Donna M. Harris-Lewis v. Gilbert H. Mudge, over which I presided.

As noted above, Dailey had agreed to the $225 rate, which was substantially lower than his customary and usual charge, as an accommodation to his client, the insured.

Hourly rates in Boston, as elsewhere, have risen very substantially since these cases, which are up to ten years old, were decided.

Northern’s omission in its reservation of rights letters to inform insureds they have a right to their own attorney could be found to be a violation of c. 93A under Leardi v. Brown, 394 Mass. 151, 155-61 (1985) (inclusion of unlawful term in leases was 93A violation irrespective of financial injury). That case, however, involved an affirmative representation rather than, as here, a misleading omission.

Richard Eurich is a senior litigation partner at Morrison, Mahoney.

Northern Security never responded at all to Sloane & Walsh’s April 18, 2006 demand letter.

The Court does not consider Northern Security’s violations to have been so egregious as to require punitive damages. The Court need not reach the additional arguments for recovery of attorney fees raised by Sloane & Walsh’s post-trial filings.

Sloane & Walsh shall file and serve within 20 days, pursuant to Rule 9A, a motion for an award of such attorney fees, together with supporting documentation.